# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANDREW J. GLUECK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-17-CV-451-XR |
| | § | |
| NATIONAL CONFERENCE OF BAR EXAMINERS, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court hereby GRANTS Defendant National Conference of Bar Examiners' ("NCBE") Motion for Summary Judgment (Docket no. 70) and DENIES Plaintiff Andrew J. Glueck's Motion for Summary Judgment (Docket no. 71).

## BACKGROUND

Plaintiff filed his Original Complaint on a *pro se* basis on May 19, 2017, naming as Defendants NCBE, the Texas Board of Law Examiners ("TBLE"), and the Law School Admissions Council, Inc. ("LSAC"). Docket no. 1. Plaintiff filed his live Second Amended Complaint on July 25, 2017. Docket no. 25. Plaintiff originally asserted claims under the Americans with Disabilities Act ("ADA"), the Texas Human Resources Code, and the Texas Deceptive Trade Practices Act ("DTPA") related to accommodations he sought to take the Texas Bar Exam and the Multistate Professional Responsibility Examination ("MPRE") to become a licensed lawyer in the State of Texas. The Court has previously dismissed Plaintiff's claims against the TBLE and LSAC. Only Plaintiff's claims against NCBE remain.

1

The MPRE is a two-hour exam that consists of sixty multiple-choice questions and is administered in a paper-and-pencil format. Docket no. 69 at 2. The exam measures knowledge and understanding of "established standards related to the professional conduct of lawyers," and in Texas, an examinee must achieve a score of at least 85 to pass the exam. *Id.* The MPRE is a standardized test, and examinees normally test under the same testing conditions. *Id.* Defendant makes an exception, however, "for individuals who NCBE concludes have documented a disability within the meaning of the ADA and need reasonable accommodations to test in an accessible manner." *Id.*

Plaintiff did not request or receive accommodations in elementary school, middle school, high school, or college. *Id.* at 5. He took the ACT and SAT examinations without requesting or receiving accommodations. *Id.* at 6–7. Plaintiff graduated from St. Mary's University in May 2011 with a Bachelor of Arts degree, with a double major in political science and philosophy, and a GPA of 3.28. *Id.* at 5. Plaintiff received a Master in Public Administration ("MPA") from St. Mary's University in May 2014 with a GPA of 3.64. *Id.* In his Master's program, Plaintiff received accommodations in some classes. *Id.* at 6.

Plaintiff took the LSAT three times between December 2010 and June 2012 and earned scores of 141 (16th percentile), 143 (21st percentile), and 145 (27th percentile). *Id.* at 7. He requested accommodations for the LSAT, but his request was denied. *Id.* Plaintiff received testing accommodations while attending the Florida Coastal School of Law between the fall of 2014 and spring of 2015 for time and a half on all quizzes and exams. *Id.* at 6. Plaintiff transferred to St. Mary's University School of Law in the fall of 2015 and received accommodations there that allowed him to record lectures, test in a quiet, non-distracting environment, and receive extended test time of one and one-half times the regular test time. *Id.*

During the fall 2015 semester, Plaintiff was also "allowed access to copies of professors' lecture notes, PowerPoint slides, and/or overheads." *Id.*

Plaintiff requested accommodations for the March 2017 administration of the MPRE based on diagnoses of ADHD and a learning disorder of processing speed impairment. *Id.* at 2. Plaintiff submitted documents to NCBE along with his accommodation request, including a 2012 psychoeducational assessment, a 2016 psychological assessment, evidence of accommodations Plaintiff received in law school, correspondence related to accommodation requests for the Law School Admission Test ("LSAT"), and LSAT score reports. *Id.* at 3.

Defendant provided Plaintiff's request and supporting documentation to Heather Hurd, Ph.D., a licensed psychologist, to obtain her professional recommendation. *Id.* Defendant denied Plaintiff's request for accommodations in a February 16, 2017, letter. *Id.* Plaintiff sat for the March 2017 MPRE, but he did not achieve a passing score. *Id.* In September 2017, Plaintiff again requested accommodations for the MPRE and submitted no additional records in support of his request. *Id.* at 4. Defendant consulted with a second outside consultant, Cathy Propper, Ph.D., a licensed psychologist, regarding Plaintiff's request. *Id.* Defendant again denied Plaintiff's request for accommodations in an October 6, 2017, letter. *Id.* Plaintiff again requested accommodations for the August 2018 MPRE and submitted additional documentation. *Id.* at 8. Defendant consulted with another outside consulting psychologist and denied Plaintiff's request in a June 11, 2018, letter. *Id.*

Plaintiff also sought testing accommodations for the Texas Bar Exam from TBLE based on his diagnosis "of a Specific Learning Disability, and not his diagnosis of ADHD." *Id.* at 4. TBLE also consulted with an outside consultant and denied Plaintiff's request. *Id.* at 5.

Plaintiff's surviving claims allege that Defendant violated the ADA and Texas Human Resources Code when it failed to give him requested accommodations for the MPRE. On July 2, 2018, Defendant filed its motion for summary judgment, arguing that Plaintiff is not disabled under the meaning of the ADA and requires no extra testing time for the MPRE. Docket no. 70. On July 3, 2018, Plaintiff filed his cross-motion for summary judgment,[1] arguing the undisputed facts show that he is disabled under the ADA and Defendant improperly denied him accommodations on the MPRE. Docket no. 71.

## DISCUSSION

**I. Legal Standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words,

---

[1] Plaintiff filed his motion one day after the scheduling order's July 2, 2018, deadline to file dispositive motions. Because Plaintiff is a *pro se* litigant and the motion was filed only one day after the deadline, however, the Court grants Plaintiff leeway and will consider his motion.

that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

II. **Application**

    A. **Plaintiff's ADA Claim**

Plaintiff alleges Defendant violated the ADA by denying him an accommodation on the MPRE because he falls under the ADA's definition of "disabled." Under the ADA, "[a]ny person that offers examinations . . . related to applications, licensing, certification, or credentialing for . . . professional . . . purposes shall offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. A person may show he or she has a "disability" if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(1)(A). The impairment must substantially limit "the ability of an individual to perform a major life activity as compared to most people in the general population." 28 C.F.R. § 36.105(d)(1)(v). "Major life activities include, but are not limited to . . . seeing, hearing, . . . learning, reading, concentrating, thinking, writing, communicating, . . . and working." *Id.* § 36.105(c)(1). "Although the ADA Amendments Act of 2008 lowered the standard that plaintiffs must meet to show that they are disabled . . ., a plaintiff must still show substantial limitation." *Mann v. Louisiana High Sch. Athletic Ass'n*, 535 F. App'x 405, 410 (5th Cir. 2013).

5

Defendant acknowledges that it is subject to § 12189 by administering the MPRE. But Defendant argues that Plaintiff is not "disabled" under the ADA, and thus, he was not entitled to his requested accommodations on the exam.

Defendant first argues that no reasonable factfinder could conclude that Plaintiff's diagnoses of ADHD and a learning disability demonstrate that he has a "mental impairment" to show that he is disabled under the ADA. Defendant argues that these diagnoses are not consistent with the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), which provides for standard criteria for the classification of certain mental disorders. Although Defendant is correct that some courts accept versions of the DSM as support for certain mental disorders, such as through expert testimony, *see, e.g.*, *United States v. Long*, 562 F.3d 325, 334 n.22 (5th Cir. 2009), the criteria found in the DSM on its own does not necessarily show whether there is a factual dispute or not on a given mental disorder. Defendant argues that because Plaintiff's records do not clearly show signs of certain features, such as evidence of childhood onset, evidence of impairment across multiple domains of life, and objective evidence of an impairment, that no reasonable factfinder could conclude that Plaintiff's diagnoses constitute a "mental impairment." However, Plaintiff has provided records of assessments where he was diagnosed with ADHD and the learning disorder after evaluators conducted several tests. There is at least a question of fact as to Plaintiff's diagnoses of the alleged mental impairments.

Next, Defendant argues that Plaintiff fails to show that his alleged ADHD and learning disorder substantially limit his ability to read, learn, concentrate, think, or perform any related major life activity as compared to most people in the general population, such that he is disabled under the ADA and entitled to accommodations. Although learning, concentrating, and thinking are "major life activities" under the ADA, the diagnosis of an impairment, alone, is not enough

6

to show that a person is disabled under the ADA; a person must show that the impairment limits a major life activity. *See Mann*, 535 F. App'x at 411 (finding that a doctor's diagnosis of an anxiety order, standing alone, was insufficient to support a finding that plaintiff was disabled under the ADA). Defendant argues Plaintiff received no accommodations in primary or secondary school or on college admissions tests and performed well at those stages of his academic career. Defendant further argues that Plaintiff scored in the average range on the LSAT without any accommodations. Defendant argues that Plaintiff's 2012 and 2016 evaluations show no evidence of difficulty in reading, concentrating, or learning in employment settings.

Plaintiff argues that the 2012 and 2016 assessments demonstrate that he is disabled under the ADA. At his 2012 evaluation conducted by Doctoral Practicum Student Ronald R. Holder, MS, LPC,[2] Plaintiff's intellectual functioning was measured using the Wechsler Adult Intelligence Scale. Docket no. 70-1 at 10. Plaintiff scored in the average range on Full Scale IQ, Verbal Comprehension, Perceptual Reasoning, Working Memory, General Ability Index, and Cognitive Proficiency Index. *Id.* at 11. Plaintiff scored in the low average range for his Processing Speed Index, which measures an examinee's ability to perform simple and automatic cognitive tasks rapidly, "particularly when under pressure to maintain focused attention within a timed environment." *Id.* at 13. Holder stated that Plaintiff's low average score "reveals a deficit in his visual tracking." *Id.* On the Woodcock-Johnson Tests of Achievement, used to measure an individual's ability to apply academic knowledge to various achievement tests, Plaintiff scored in the average to superior range for all areas compared to others his age, except for Academic Fluency, Reading Fluency, and Writing Fluency, all of which are obtained under timed

---

[2] The report indicates that Holder was under the supervision of Licensed Neuropsychologist and Clinical Psychologist Barbara Harding, Ph.D.

7

conditions, and for which Plaintiff scored "in the low end of the Average range." *Id.* Holder found that Plaintiff's scores on the timed subtests "were significantly lower than expected and indicate that time is a [*sic*] issue for him when he is learning or when he is showing what he has learned." *Id.* On the Nelson-Denny Reading Test, which measures reading achievement, vocabulary, reading comprehension, and reading rate, Plaintiff's reading comprehension score measured "at the bottom of the Low Average range and indicates that his Reading Comprehension abilities suffer within pre-set time limits." *Id.* at 15. Holder found that Plaintiff's reading rate, however, was in the 37th percentile and in the "average" range. *Id.* On the Conners' Continuous Performance Test, which screens for potential attention problems, Plaintiff's results indicated "there is a 50% chance that ADHD does exist" and that he had a "somewhat different response tendency than that of a typical respondent from the norm group." *Id.* at 16. Holder concluded that Plaintiff's intellectual abilities ranged from the low average to average range, even with a deficiency in processing speed. *Id.* Holder found Plaintiff's scores indicate he is "struggling significantly when he takes timed exams in all of his classes and that he is unable to finish exams within established time limits." *Id.* Holder notes Plaintiff's self-reporting of struggling to keep up with peers in law school and suggests that Plaintiff get "extra time on exams and additional practice with basic information," but Holder does not opine further on how Plaintiff's slow processing speed may substantially limit his ability to perform major life functions compared to the general population. Holder diagnosed Plaintiff with ADHD, Combined Type and Learning Disorder (Processing Speed Deficit). *Id.* at 16.

At his 2016 evaluation, Plaintiff was examined by Doctoral Intern Aimee Keith, MA,[3] and underwent similar tests and observations. Docket no. 70-1 at 35. On this run of the Conners' Continuous Performance Test, all of Plaintiff's scores fell within normal ranges and "did not indicate that Plaintiff has difficulties with sustained attention, attention to detail, or impulsivity." *Id.* at 38. On the Conners' Continuous Auditory Test of Attention, Keith concluded Plaintiff "does not appear to have difficulties with sustained attention or with shifting auditory attention from one ear to another." *Id.* at 37. On the Conners' Adult ADHD Rating Scales, Keith concluded that Plaintiff showed some symptoms of attention difficulties and hyperactivity/impulsivity and concluded that his results "indicate the presence of mild to moderate [ADHD]." *Id.* at 38. Keith conducted a Learning and Study Strategies Inventory to assess Plaintiff's "perception of their current command of necessary college learning skills," and concluded Plaintiff had strengths in time management and information processing. *Id.* at 39–40. Based on those results, Keith concluded Plaintiff should "improve his test taking strategies and mode of studying to most effectively learn and demonstrate his knowledge." *Id.* at 40. Keith stated it appeared Plaintiff suffered from high levels of anxiety and he should "focus on obtaining coping skills to modulate his anxiety." *Id.* Keith administered the Minnesota Multiphase Personality Second Edition, a test that evaluates a subject's personality, and concluded that Plaintiff showed signs of vacillating between feeling adequate and inadequate and having thoughts that jump from topic to topic, "as would be consistent with slight anxiety or attentional difficulties." *Id.* Keith, however, concluded Plaintiff showed no signs of significant psychopathology, pathological deviancy, or abnormal personality patterns. *Id.* On the Nelson-

---

[3] The report indicates that Keith was supervised by Licensed Neuropsychologist and Clinical Psychologist Barbara Harding, Ph.D.

Denny Reading Test, Plaintiff's vocabulary score was in the average range, and his reading rate score was in the low average range. *Id.* at 41. His comprehension score was in the borderline range and in the 4th percentile of his peers, and when given extended time to complete that portion, his score rose to the average range. *Id.* On the Wechsler Adult Intelligence Scale, Plaintiff scored average or high average on Full Scale IQ, Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed. *Id.* at 42. The only score in the low range was Cancellation, which Keith concluded indicated that "while Plaintiff was quick, he sacrificed accuracy for speed on this subtest." *Id.* On the Woodcock-Johnson Tests of Achievement, Plaintiff scored well within the average range on Calculation, Written Expression Clusters, and Basic Reading. *Id.* at 44. Plaintiff's lowest scores were in Reading Comprehension, Broad Reading, and General Reading, but these scores also fell within the average range. On the Woodcock-Johnson Tests of Cognitive Abilities, Plaintiff scored in the average range in all areas. *Id.* at 45. On the Woodcock-Johnson Tests of Oral Language, all of Plaintiff's scores fell within the average range. *Id.* at 45–46. Keith concluded that Plaintiff's "testing yielded mixed results in the area of attention and impulsivity." Keith notes that some scores "did not indicate attentional or impulsivity issues, but [Plaintiff's] self-report . . . indicated the presence of mild to moderate ADHD symptoms." *Id.* at 46. Keith stated that Plaintiff's reading speed is in the low average range "and below what would be expected," but she does not further opine on how Plaintiff's reading speed may substantially limit his ability to perform major life functions compared to the general population. Keith diagnosed Plaintiff with Mild Specific Learning Disorders with Impairment in Reading and Processing Speed and with ADHD. *Id.* at 47.

Even with the two evaluations, and accepting the diagnoses as accurate, Plaintiff fails to establish that he is a person with a disability under the ADA. As discussed above, Plaintiff must

not only show that he is diagnosed with a mental impairment or that he suffers from that impairment, but that the impairment substantially limits him with respect to a major life activity. The evaluations show that Plaintiff performs in the "low average" range in certain areas of mental functioning, and the evaluators' conclusions indicate that these present some challenges for Plaintiff, but Plaintiff fails to show that he is substantially limited as compared to the general population. *See Gonzalez v. Supreme Court of Tex.*, No. A-04-CA-750-SS, 2006 WL 897745, at *6 (W.D. Tex. Jan. 31, 2006) (finding plaintiff failed to show substantial impairment beyond self-reported symptoms and psychologists' diagnoses). Although the evaluators found the results to indicate that Plaintiff would struggle with timed tests, Plaintiff's results also never fall below the "low average" range.[4] The results consistently show Plaintiff demonstrated some deficiencies, but the evaluators never concluded that these deficiencies substantially impair Plaintiff's abilities. For example, the 2012 evaluation found that there was only a 50% chance Plaintiff had ADHD and that he only had a "somewhat different response tendency" than other typical respondents from the norm group. Also, in the 2016 evaluation, Keith concluded Plaintiff showed some symptoms of "mild to moderate" ADHD. Rather than point out how Plaintiff may be substantially impaired in major life activities, Keith concluded Plaintiff suffered from anxiety

---

[4] The only instance in which Plaintiff scored lower than the low average range was on the Nelson-Denny Reading Test at the 2016 evaluation. His comprehension score was in the borderline range and he scored in the 4th percentile of his peers. However, this comparison was made "using end of college norms," and when "when using norms more comparable to the Average person," Defendant's reviewing psychologist Heather Hurd found that the score rose to the 27th percentile and "within the Average range." Docket no. 70-1 at 62. Another one of Defendant's reviewing psychologists, Cathy Propper, similarly concluded that Plaintiff fell in the average range when compared to those entering college. *Id.* at 76. The Court finds the adjustment convincing to show Plaintiff scored in the average range. *See Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, No. CV 15-4987, 2016 WL 1404157, at *8 (E.D. Pa. Apr. 11, 2016) ("Moreover, the Nelson-Denny compared Bibber to other four-year college graduates, which is assuredly not representative of the general population when over half of the people in the country lack a bachelor's degree.").

and should obtain coping skills to modulate that anxiety. These are not the type of results that show Plaintiff may have been substantially impaired in a major life activity, and the evaluators did not opine further as to that question.

The conclusion that Plaintiff is not disabled under the ADA is supported by the fact that he succeeded academically in primary and secondary school and college without requesting or receiving accommodations, took the SAT and ACT without requesting or receiving accommodations, and took the LSAT without accommodations and scored in the average range.

Plaintiff relies on his 2012 and 2016 evaluations and the fact that he received accommodations on tests, quizzes, and exams while in law school to show that he is disabled under the ADA. The fact that Plaintiff recently received some accommodations in school, without more, does not rise to the level of showing he was substantially limited as defined by the ADA. Plaintiff's argument seems to rest on the general statement that "[i]t is undisputed that plaintiff's individual assessments of 2012 and 2016 by qualified professionals determined him to be a qualified individual with disabilities within the meaning of [the ADA]." Docket no. 71 at 14. But as discussed at length above, the Court finds that the evaluations do not indicate that Plaintiff's evaluators reached such a conclusion. The evaluators ran several tests, noted Plaintiff's struggles with processing speed and reading comprehension under certain conditions, and found Plaintiff showed mild to moderate signs of ADHD and likely suffered from anxiety. The evaluators did not indicate beyond their diagnoses and Plaintiff's self-reporting how Plaintiff might be substantially limited in his ability to perform major life activities compared to the general population. Plaintiff provides no further evidence to show how he might be so substantially limited.

Despite his diagnoses and evaluations, Plaintiff has failed to present sufficient evidence to show that any mental impairment that he might have substantially limits his ability to perform major life activities as compared to most people in the general population. Based on the record, Plaintiff has failed to create a fact issue that he is a person with a disability under the ADA. Thus, Defendant is entitled to summary judgment on Plaintiff's ADA claim. For the same reasons, Plaintiff is not entitled to summary judgment.

**B. Plaintiff's Texas Human Resources Code Claim**

Plaintiff alleges Defendant also violated the Texas Human Resources Code by denying him an accommodation on the MPRE. Section 121.011 of the Code states in part:

> A private entity that offers an examination or a course related to applications, certification, credentialing, or licensing for secondary or postsecondary education, a profession, or a trade shall . . . offer the examination or course in a place and manner that is accessible to persons with disabilities or make alternative accessible arrangements for persons with disabilities.

TEX. HUM. RES. CODE § 121.011(a)(1). This provision uses language similar to § 12189 of the ADA. *See* 42 U.S.C. § 12189. The Texas Legislature amended the Texas Human Resources Code in 1997, in part, to "clean up" the language and make it more "compatible" with the ADA. *See, e.g.*, House Comm. on Human Servs., Bill Analysis, Tex. H.B. 2525, 75th Leg., R.S. (1997), available at https://capitol.texas.gov/tlodocs/75R/analysis/html/HB02525H.htm; House Comm. on Human Servs., Bill Analysis (Amended), Tex. H.B. 2525, 75th Leg., R.S. (1997), available at https://capitol.texas.gov/tlodocs/75R/analysis/html/HB02525S.htm. Further, Plaintiff frames his claim under the Texas Human Resources Code as derivative of his ADA claim. *See* Docket no. 25 at 21–23, 26. Thus, Plaintiff must show that he is a person with a disability within the meaning of the ADA to prevail on a claim under the related Texas Human Resources Code provision. But as discussed above, Plaintiff fails to create a fact issue that he is a disabled person

as defined by the ADA. Thus, Plaintiff is not entitled to summary judgment on his Texas Human Resources Code claim. Defendant is entitled to summary judgment on the claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Docket no. 71) is DENIED. Defendant's Motion for Summary Judgment (Docket no. 70) is GRANTED. Accordingly, Plaintiff's remaining claims against Defendant NCBE are DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of Defendant, and that Plaintiff takes nothing on his claims. Defendant may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 20th day of August, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE